1

2

3

4

5

6

7

8              IN THE UNITED STATES DISTRICT COURT

9             FOR THE EASTERN DISTRICT OF CALIFORNIA

10   ANDONO LEON MORRIS,

11              Petitioner,              No. CIV S-08-1790 FCD DAD P

12        vs.

13   I.D. CLAY, Warden,

14              Respondent.          FINDINGS AND RECOMMENDATIONS

15   _____/

16              Petitioner is a state prisoner proceeding pro se with a second amended petition for

17   a writ of habeas corpus pursuant to 28 U.S.C. § 2254.  The second amended habeas petition

18   before the court challenges petitioner's 2005 conviction in the Sutter County Superior Court for

19   driving in the willful or wanton disregard for the safety of persons or property while fleeing from

20   a pursuing police officer in violation of California Vehicle Code § 2800.2 and for failing to stop

21   at the scene of an injury accident in violation of California Vehicle Code § 20001.  Petitioner

22   seeks federal habeas relief on the grounds that: (1) the evidence presented at his trial was

23   insufficient to support his conviction for failing to stop; (2) his conviction was the result of an

24   illegal vehicle stop; (3) the prosecutor presented perjured trial testimony; (4) evidence of a third

25   vehicle occupant was improperly excluded from evidence at trial; and (5) his trial counsel

26   rendered ineffective assistance.

1

1    Upon careful consideration of the record and the applicable law, the undersigned

2    will recommend that petitioner's application for habeas corpus relief be denied.

3    PROCEDURAL BACKGROUND

4    On May 10, 2005, following a court trial, petitioner was found guilty of driving in

5    the willful or wanton disregard for the safety of persons or property while fleeing from a pursuing

6    police officer and of failing to stop at the scene of an injury accident.  (Notice of Lodging

7    Documents on November 5, 2009 (Doc. No. 30), Reporter's Transcript on Appeal (RT) at 162-

8    64.)  Additionally the trial court found that sentencing enhancement allegations with respect to

9    two prior serious felony convictions and two prior prison terms to be true.  (Id. at 164-65.)

10   Following his conviction, petitioner was sentenced on July 19, 2005, to a state prison term of

11   twenty-five years to life plus an additional two-year enhancement term for the prior convictions

12   and prisons terms.  (Id. at 197.)

13   Petitioner appealed his judgment of conviction to the California Court of Appeal

14   for the Third Appellate District.  On April 20, 2007, the judgment of conviction was affirmed in

15   a reasoned opinion.[1]  (Resp't's Lod. Doc. 1.)  Petitioner then filed a petition for review with the

16   California Supreme Court.  (Resp't's Lod. Doc. 5.)  On July 18, 2007, the California Supreme

17   Court summarily denied that petition.  (Resp't's Lod. Doc. 6.)  On August 4, 2008, petitioner

18   filed his original petition for a writ of habeas corpus in this court, raising only the insufficiency

19   of the evidence claim.  (Doc. No. 1.)

20   On October 9, 2008, petitioner filed a petition for writ of habeas corpus in the

21   Sutter County Superior Court raising six additional claims.  (Resp't's Lod. Doc. 7.)  The Sutter

22   County Superior Court denied that petition on November 3, 2008.  (Resp't's Lod. Doc. 8 at 2).

23   Petitioner then presented those six claims in a petition for writ of habeas corpus filed in the

24

25   _____

26   [1] In affirming the conviction the state appellate court did, however, direct the trial court to correct a clerical error reflected in the amended abstract of judgment.  (Resp't's Lod. Doc. 4 at 16-17.)

2

California Court of Appeal for the Third Appellate District . (Resp't's Lod. Doc. 9.) That petition was summarily denied on January 8, 2009. (Resp't's Lod. Doc. 10.) Those same claims for relief were then raised in a petition for writ of habeas corpus filed by petitioner in the California Supreme Court on March 11, 2009. (Resp't's Lod. Doc. 11.)

On July 14, 2009, before the California Supreme Court reached a decision as to the habeas petition filed with that court, petitioner filed his first amended petition for writ of habeas corpus in this court raising his original exhausted insufficiency of the evidence claim and his six still unexhausted claims. (Doc. No. 21.) On July 16, 2009, the undersigned issued findings and recommendations recommending that this action be stayed so that petitioner could exhaust the six still unexhausted claims. (Doc. No. 22.)

On July 29, 2009, the California Supreme Court denied petitioner's March 11, 2009, petition with a citation to In re Swain, 34 Cal.2d 300, 304 (1949). (Resp't's Lod. Doc. 12.) On August 31, 2009, petitioner filed this second amended petition in this court raising his original insufficiency of the evidence claim and the six newly exhausted claims, as well as a motion to lift the stay. (Doc. No. 24, 25.) On September 4, 2009, petitioner's motion to lift the stay was granted. (Doc. No. 26.) Respondent filed an answer on October 28, 2009. (Doc. No. 29.) Petitioner filed his traverse on November 23, 2009. (Doc. No. 32.)

## FACTUAL BACKGROUND

In its unpublished memorandum and opinion affirming petitioner's judgment of conviction on appeal, the California Court of Appeal for the Third Appellate District provided the following factual summary:

> On December 16, 2004, defendant borrowed his sister's Dodge Stratus, used the car to drive her mother home, and then picked up a friend, Angalett Mims.
>
> At about 1:00 a.m., police officer Bill Williams, who was on patrol in uniform and driving a marked patrol car, saw the Dodge Stratus and noticed its brake lights were not operating. Williams activated his overhead red and blue lights to make a traffic stop. Defendant, the driver of the Dodge, initially pulled over but then sped away

after Williams got out and walked toward the Dodge.  Williams returned to the patrol car and chased the Dodge with his lights and siren operating.

The fog was thick and visibility was about one-half block.  While making a turn, the Dodge skidded across both lanes of traffic, struck the curb, and accelerated up to approximately 65 miles per hour, running through a red light without slowing.  At another intersection, defendant decelerated and made a 180-degree turn.  Officer Williams had to brake in order to avoid colliding with the Dodge as it made the turn.

The Dodge sped off, fishtailing as it rounded the corner in a residential area.  Its speed increased to 65 miles per hour, well over the 25-mile-per-hour limit.

Defendant lost control of the Dodge when it went over a dip in the roadway and hit a bump; it spun around several times, struck a fence and a tree, and ended up in an open field.  The Dodge was "totaled."  Its front bumper was on the ground near the fence, and its rear bumper was "barely hanging on."

Upon seeing the crash, Officer Williams requested medical assistance because he assumed "there was going to be somebody that was injured."

Immediately after the crash, defendant told Mims to run but she stayed in the Dodge.  Defendant fled without asking Mims if she was injured and without checking on her or aiding her in any way.  Officer Williams saw defendant get out of the car and ordered him to stop, but defendant ran away.

Seeing Mims in the front seat of the Dodge with her seat-belt on, Williams went to her aid rather than chase after defendant.  Mims was "upset, scared and shaking," and told Williams her neck hurt.  She also had pain in her leg.  When "rescue" workers arrived on the scene, they put a brace on her neck because she told them it hurt.  She was then transported to a hospital, where she said she was "okay" and declined treatment.  By the time of trial, she still had pain in her leg, although she had not seen a doctor for it.

A search of the Dodge revealed a sales contract in the name of Anetta Ford, defendant's sister.  Ford told Officer Williams that defendant had borrowed the Dodge at about 11:00 p.m. the previous evening.  When Ford's daughter later went to retrieve some property from the Dodge, she saw it had been "[c]ompletely totaled."

Defendant's parole agent testified that defendant absconded from supervision before the present incident, and a warrant was outstanding for his arrest.  Conditions of defendant's parole

4

1   precluded him from being away from his home at the time of the
2   incident and from driving his sister's car without notifying the
    parole agent.

3   (Resp't's Lod. Doc. 4 (hereinafter Opinion).)

4                                    ANALYSIS

5   I.  Standards of Review Applicable to Habeas Corpus Claims

6           A writ of habeas corpus is available under 28 U.S.C. § 2254 only on the basis of

7   some transgression of federal law binding on the state courts.  See Peltier v. Wright, 15 F.3d 860,

8   861 (9th Cir. 1993); Middleton v. Cupp, 768 F.2d 1083, 1085 (9th Cir. 1985) (citing Engle v.

9   Isaac, 456 U.S. 107, 119 (1982)).  A federal writ is not available for alleged error in the

10  interpretation or application of state law.  See Estelle v. McGuire, 502 U.S. 62, 67-68 (1991);

11  Park v. California, 202 F.3d 1146, 1149 (9th Cir. 2000); Middleton, 768 F.2d at 1085.  Habeas

12  corpus cannot be utilized to try state issues de novo.  Milton v. Wainwright, 407 U.S. 371, 377

13  (1972).

14          This action is governed by the Antiterrorism and Effective Death Penalty Act of

15  1996 ("AEDPA").  See Lindh v. Murphy, 521 U.S. 320, 336 (1997); Clark v. Murphy, 331 F.3d

16  1062, 1067 (9th Cir. 2003).  Title 28 U.S.C. § 2254(d) sets forth the following standards for

17  granting habeas corpus relief:

18          An application for a writ of habeas corpus on behalf of a
        person in custody pursuant to the judgment of a State court shall
19          not be granted with respect to any claim that was adjudicated on
        the merits in State court proceedings unless the adjudication of the
20          claim -

21              (1) resulted in a decision that was contrary to, or involved
        an unreasonable application of, clearly established Federal law, as
22          determined by the Supreme Court of the United States; or

23              (2) resulted in a decision that was based on an unreasonable
        determination of the facts in light of the evidence presented in the
24          State court proceeding.

25  See also Penry v. Johnson, 532 U.S. 782, 792-93 (2001); Williams v. Taylor, 529 U.S. 362

26  (2000); Lockhart v. Terhune, 250 F.3d 1223, 1229 (9th Cir. 2001).  If the state court's decision

1  does not meet the criteria set forth in § 2254(d), a reviewing court must conduct a de novo review

2  of a habeas petitioner's claims.  Delgadillo v. Woodford, 527 F.3d 919, 925 (9th Cir. 2008).  See

3  also Frantz v. Hazey, 513 F.3d 1002, 1013 (9th Cir. 2008) (en banc) ("[I]t is now clear both that

4  we may not grant habeas relief simply because of § 2254(d)(1) error and that, if there is such

5  error, we must decide the habeas petition by considering de novo the constitutional issues

6  raised.").

7          The court looks to the last reasoned state court decision as the basis for the state

8  court judgment.  Robinson v. Ignacio, 360 F.3d 1044, 1055 (9th Cir. 2004).  If the last reasoned

9  state court decision adopts or substantially incorporates the reasoning from a previous state court

10  decision, this court may consider both decisions to ascertain the reasoning of the last decision.

11  Edwards v. Lamarque, 475 F.3d 1121, 1126 (9th Cir. 2007) (en banc).  Where the state court

12  reaches a decision on the merits but provides no reasoning to support its conclusion, a federal

13  habeas court independently reviews the record to determine whether habeas corpus relief is

14  available under § 2254(d).  Himes v. Thompson, 336 F.3d 848, 853 (9th Cir. 2003); Pirtle v.

15  Morgan, 313 F.3d 1160, 1167 (9th Cir. 2002).  When it is clear that a state court has not reached

16  the merits of a petitioner's claim, or has denied the claim on procedural grounds, the AEDPA's

17  deferential standard does not apply and a federal habeas court must review the claim de novo.

18  Nulph v. Cook, 333 F.3d 1052, 1056 (9th Cir. 2003).

19  II.  Petitioner's Claims

20       A.  Procedural Default

21          Respondent asserts that federal habeas review of petitioner's second through

22  seventh claim is procedurally barred.  (Answer at 19.)  Respondent notes that petitioner raised

23  these claims in his March 11, 2009, state habeas petition and that the California Supreme Court

24  denied relief with a citation to In re Swain, 34 Cal.2d 300, 304 (1949).  (Id. at 20.)  Respondent

25  argues that such a citation to Swain may indicate a denial based on the conclusory nature of the

26  claims or, alternatively, on untimeliness grounds.  (Id.)  Respondent contends that because a

6

1 review of the state petition in question shows that petitioner alleged his claims with exceptional

2 particularity, the California Supreme Court's citation to Swain must have been intended as a

3 denial based on untimeliness grounds.  (Id.)[2]

4        The denial of a habeas petition with a citation to In re Swain is deemed a denial

5 on procedural grounds, leaving state remedies unexhausted.  Kim v. Villalobos, 799 F.2d 1317,

6 1319 (9th Cir. 1986).  Respondent, however, concedes that petitioner has exhausted all of the

7 claims presented in his second amended petition pending before this court.  Moreover, even if

8 petitioner's claims were unexhausted, an application for a writ of habeas corpus may be denied

9 on the merits, notwithstanding the failure of the applicant to exhaust available state remedies.  28

10 U.S.C. § 2254(b)(2).  A federal court considering a habeas petition may deny an unexhausted

11 claim on the merits when it is perfectly clear that the claim is not "colorable."  Cassett v. Stewart,

12 406 F.3d 614, 624 (9th Cir. 2005).  Here, the undersigned will recommend that federal habeas

13 relief be denied on the merits of petitioner's claims two through seven because they are not

14 "colorable."

15 /////

16

17     [2] State courts may decline to review a claim based on a procedural default.  Wainwright v. Sykes, 433 U.S. 72 (1977).  As a general rule, a federal habeas court "'will not review a

18 question of federal law decided by a state court if the decision of that court rests on a state law ground that is independent of the federal question and adequate to support the judgment.'"

19 Calderon v. United States District Court (Bean), 96 F.3d 1126, 1129 (9th Cir. 1996) (quoting Coleman v. Thompson, 501 U.S. 722, 729 (1991)).  The state rule is only "adequate" if it is

20 "firmly established and regularly followed."  Id. (quoting Ford v. Georgia, 498 U.S. 411, 424 (1991)).  See also Bennett v. Mueller, 322 F.3d 573, 583 (9th Cir. 2003) ("[t]o be deemed

21 adequate, the state law ground for decision must be well-established and consistently applied.") The state rule must also be "independent" in that it is not "interwoven with the federal law."

22 Park v. California, 202 F.3d 1146, 1152 (9th Cir. 2000) (quoting Michigan v. Long, 463 U.S. 1032, 1040-41 (1983)).  Even if the state rule is independent and adequate, the claims may be

23 heard if the petitioner can show: (1) cause for the default and actual prejudice as a result of the alleged violation of federal law; or (2) that failure to consider the claims will result in a

24 fundamental miscarriage of justice.  Coleman, 501 U.S. at 749-50.  However, a reviewing court need not invariably resolve the question of procedural default prior to ruling on the merits of a

25 claim where the issue of procedural default turns on difficult questions of state law.  Lambrix v. Singletary, 520 U.S. 518, 524-25 (1997).  Under the circumstances presented here, this court

26 finds that petitioner's claims can be resolved more easily by addressing them on the merits. Accordingly, the court will assume that petitioner's claims are not procedurally defaulted.

B. <u>Sufficiency of the Evidence</u>

Petitioner claims that there was insufficient evidence introduced at trial to support his conviction for violating California Vehicle Code § 20001.  Specifically, petitioner asserts that there was no evidence that the crash resulted in injury to his passenger, Mims, or that petitioner knew Mims was injured before he fled the scene.  (Second Am. Pet. at 36-40.)  Petitioner argues that his conviction was based solely on the uncorroborated testimony of Mims, who indicated that she was not injured in the crash and who later told the hospital staff that she "was okay." (<u>Id.</u> at 36-37.)  Petitioner argues that Mims testified that she only experienced pain in her neck and leg after she exited the vehicle.  (<u>Id.</u> at 39.)  Petitioner further argues that because Officer Williams was not aware that Mims was injured until she exited the vehicle, petitioner could not have known Mims was injured because he fled the scene prior thereto.  (<u>Id.</u> at 40.)

Petitioner also claims that in order for a violation of § 20001 to constitute a felony, the accident must have resulted in permanent injury, serious injury, or death.  (<u>Id.</u> at 36). He argues that because there was no evidence that Mims "suffered loss or permanent impairment of any bodily member or organ" the evidence introduced at his trial was insufficient to support a felony conviction.  (<u>Id.</u> at 40.)

The California Court of Appeal specifically rejected petitioner's argument that there was insufficient evidence introduced at trial to support his conviction for violating California Vehicle Code § 20001.  In so holding, the state appellate court reasoned as follows:

> Defendant contends that his conviction on count two, for violating Vehicle Code section 20001, is not supported by sufficient evidence that he knew of Mims's injury at the time he fled the accident scene.  We are not persuaded.
>
> Vehicle Code section 20001, subdivision (a) provides that the "driver of any vehicle involved in an accident resulting in injury to any person, other than himself or herself . . . shall immediately stop the vehicle at the scene of the accident and shall fulfill the requirements of Sections 20003 and 20004."
>
> Vehicle Code section 20003, subdivision (a) requires the driver to "give his or her name, current residence address, the names and

8

current residence addresses of any occupant of the driver's vehicle injured in the accident, the registration number of the vehicle he or she is driving, and the name and current residence address of the owner . . . to any traffic or police officer at the scene of the accident," and requires the driver to "*render to any person injured in the accident reasonable assistance, including transporting, or making arrangements for transporting, any injured person to a physician, surgeon, or hospital for medical or surgical treatment if it is apparent that treatment is necessary or if that transportation is requested by any injured person.*"  (Italics added.)

A conviction under section 20001, subdivision (a) of the Vehicle Code requires proof of knowledge of the injury.  (People v. Holford (1965) 63 Cal.2d 74, 80.)  Such knowledge usually "must be derived from the surrounding facts and circumstances of the accident" because "the driver who leaves the scene of the accident seldom possesses actual knowledge of injury; by leaving the scene he forecloses any opportunity to acquire such actual knowledge." (Ibid.)  Hence a "requirement of actual knowledge of injury would realistically render the statute useless.... [C]riminal liability attaches to a driver who knowingly leaves the scene of an accident if he actually knew of the injury or *if he knew that the accident was of such a nature that one would reasonably anticipate that it resulted in injury to a person.*"  (Ibid.*;*italics added; fn. omitted.)

In this case, the crash was so serious that a reasonable person in defendant's position would have anticipated it caused injuries to Mims.  (People v. Holford, supra*,* 63 Cal.2d at p. 80.)  The Dodge spun around several times, hit a fence and tree, and was "completely totaled."  Upon seeing the crash, Officer Williams immediately called for medical assistance because he anticipated the occupants were injured.

Defendant counters that, unlike Officer Williams, defendant "had the benefit of actually seeing Ms. Mims," and "[t]here were not any objective signs of injury, such as bleeding, scratches, or other signs of physical trauma."  He also knew that, regardless of the "force of the crash," the collision had not caused him any injury.

However, when defendant told Mims to flee, she did not do so. This fact, coupled with the severe nature of the crash, would have led a reasonable person to believe Mims was hurt even though she did not have any other visual signs of injury.

The force of crash distinguishes this case from People v. Carter (1966) 243 Cal.App.2d 239 (hereafter Carter), upon which defendant relies.  Indeed, Carter recognized that "constructive knowledge of personal injury" may be "imputed to the driver of a vehicle ... where the seriousness of the collision would lead a reasonable person to assume there must have been resulting injuries."  (Id. at p. 241.)  This was such a case.

1    Defendant tries to minimize Mims's injuries by noting her refusal
     of medical treatment at the hospital and her "less than certain"
2    testimony at trial.  However, Vehicle Code section 20001 does not
     require any particular degree of injury; it requires only "injury to
3    any person."  Regardless of whether Mims sought treatment,
     substantial evidence established that she had neck and leg pain
4    immediately following the collision and continued to have leg pain
     five months later at trial.
5
     In sum, the count two conviction is supported by substantial
6    evidence that defendant had constructive knowledge of injury to
     Mims. (People v. Holford, supra, 63 Cal.2d at p. 80.)
7

8    (Opinion at 4-7.)

9          The Due Process Clause of the Fourteenth Amendment "protects the accused

10   against conviction except upon proof beyond a reasonable doubt of every fact necessary to

11   constitute the crime with which he is charged."  In re Winship, 397 U.S. 358, 364 (1970).  There

12   is sufficient evidence to support a conviction if, "after viewing the evidence in the light most

13   favorable to the prosecution, any rational trier of fact could have found the essential elements of

14   the crime beyond a reasonable doubt."  Jackson v. Virginia, 443 U.S. 307, 319 (1979).  "[T]he

15   dispositive question under Jackson is 'whether the record evidence could reasonably support a

16   finding of guilt beyond a reasonable doubt.'"  Chein v. Shumsky, 373 F.3d 978, 982 (9th Cir.

17   2004) (quoting Jackson, 443 U.S. at 318).  "A petitioner for a federal writ of habeas corpus faces

18   a heavy burden when challenging the sufficiency of the evidence used to obtain a state conviction

19   on federal due process grounds."  Juan H. v. Allen, 408 F.3d 1262, 1274 (9th Cir. 2005).  In

20   order to grant the writ, the federal habeas court must find that the decision of the state court

21   reflected an objectively unreasonable application of Jackson and Winship to the facts of the case.

22   Id. at 1275 & n.13.

23          The court must review the entire record when the sufficiency of the evidence is

24   challenged in habeas proceedings.  Adamson v. Ricketts, 758 F.2d 441, 448 n.11 (9th Cir. 1985),

25   vacated on other grounds, 789 F.2d 722 (9th Cir. 1986) (en banc), rev'd, 483 U.S. 1 (1987).  It is

26   the province of the jury to "resolve conflicts in the testimony, to weigh the evidence, and to draw

                                                    10

1   reasonable inferences from basic facts to ultimate facts." Jackson, 443 U.S. at 319.  If the trier of

2   fact could draw conflicting inferences from the evidence, the court in its review will assign the

3   inference that favors conviction.  McMillan v. Gomez, 19 F.3d 465, 469 (9th Cir. 1994).

4   "Circumstantial evidence and inferences drawn from it may be sufficient to sustain a conviction."

5   United States v. Cordova Barajas, 360 F.3d 1037, 1041 (9th Cir. 2004) (internal quotation marks,

6   brackets and citation omitted).  In addition, "the assessment of the credibility of witnesses is

7   generally beyond the scope of review." Schlup v. Delo, 513 U.S. 298, 330 (1995). See also

8   Sarausad, 479 F.3d at 678 ("A jury's credibility determinations are entitled to near-total

9   deference[.]") (internal quotation marks and citation omitted).

10           The relevant inquiry is not whether the evidence excludes every hypothesis except

11  guilt, but whether the jury could reasonably arrive at its verdict.  United States v. Mares, 940

12  F.2d 455, 458 (9th Cir. 1991).  Thus, "[t]he question is not whether we are personally convinced

13  beyond a reasonable doubt" but rather "whether rational jurors could reach the conclusion that

14  these jurors reached." Roehler v. Borg, 945 F.2d 303, 306 (9th Cir. 1991).  The federal habeas

15  court determines sufficiency of the evidence in reference to the substantive elements of the

16  criminal offense as defined by state law.  Jackson, 443 U.S. at 324 n.16; Chein, 373 F.3d at 983.

17           Pursuant to California law,

18       The driver of a vehicle involved in an accident resulting in injury
         to a person, other than himself or herself, or in the death of a
19       person shall immediately stop the vehicle at the scene of the
         accident and shall fulfill the requirements of Sections 20003 and
20       20004.

21  Cal. Veh. Code § 20001(a).  California Vehicle Code § 20003(a) in turn imposes a duty upon the

22  driver of a vehicle involved in an accident resulting in injury to provide relevant information to

23  any police officer at the scene of the accident and to render aid to any injured person.

24  "[K]nowledge of injury is an essential element of the crime proscribed" by § 20001.  People v.

25  Holford, 63 Cal.2d 74, 80 (1965).  "Yet the driver who leaves the scene of the accident seldom

26  possesses actual knowledge of injury; by leaving the scene he forecloses and opportunity to

11

1   acquire such actual knowledge." Id.  Therefore, "criminal liability attaches to a driver who

2   knowingly leaves the scene of an accident if he actually knew of the injury or if he knew that the

3   accident was of such a nature that one would reasonably anticipate that it resulted in injury to a

4   person." Id.

5          Here, viewing the evidence in the light most favorable to the verdict, the

6   undersigned concludes that there was sufficient evidence introduced at petitioner's trial from

7   which a rational trier of fact could have found beyond a reasonable doubt that petitioner was the

8   driver of a vehicle involved in an accident resulting in injury to a person, other than himself, and

9   that petitioner failed to immediately stop and provide relevant information or render aid.  Mims

10  testified at trial that petitioner was the driver of the vehicle that crashed after the highspeed

11  pursuit.  (RT at 85.)  While Mims initially testified that she was not hurt, she later acknowledged

12  that she injured her leg after pushing her feet against the floor of the vehicle in an attempt to

13  avoid hitting "the front of the car."  (Id. at 84.)  Petitioner's argument that this injury was caused

14  by Mims' own actions and was therefore not "a result of the vehicle accident" (Second Am. Pet.

15  at 39) is unpersuasive.  Mims' injury was sustained in an attempt to avoid a potentially more

16  serious injury and would not have occurred but for the crash.  Additionally Mims suffered pain in

17  her neck after the accident.  (RT at 84.)  Finally, after the crash petitioner did not ask if Mims

18  was injured, but instead "took off."  (Id. at 95.)

19         While petitioner argues that because "the only alleged injury was a complaint of

20  pain," (Second Am. Pet. at 39) and because "the passenger compartment was intact and Ms.

21  Mims had been seat-belted" (Id. at 40) he did not know that Mims was injured, the severe nature

22  of the crash would have led a reasonable person to believe that Mims was hurt.  According to

23  Mims the vehicle hit "a lot of things" and she feared the car "was going to blow up."  (RT at 83.)

24  According to Officer Williams the vehicle was traveling at approximately 65 miles per hour

25  when it traveled over a dip, hit a bump, and lost control.  (Id. at 105.)  The car spun around

26  several times before the front of the vehicle struck a chainlink fence, the rear end struck a tree,

and the car came to rest in an open field.  (Id.)  The front bumper was found near the fence and the rear bumper was "barely hanging on."  (Id. at 109.)  In Officer Williams' opinion the vehicle "was totaled."  (Id. at 108.)  After witnessing the crash, Williams immediately called for medical assistance because he "assumed that there was going to be somebody that was injured in the vehicle."  (Id.)

As noted, petitioner argues that in order for a violation of California Vehicle Code § 20001 to constitute a felony, the accident must have resulted in permanent injury, serious injury, or death.  Petitioner appears to have misread the state statute in this regard.  Under § 20001(b)(1), a person convicted of violating § 20001(a) "shall be punished by imprisonment in the state prison, or in county jail for not more than one year. . ."  (Cal. Veh. Code § 20001(b)(1).)  If however the accident resulted in "death or permanent, serious injury" the term of imprisonment is increased to two, three, or four years in state prison, or not less than 90 days in county jail.  (Id. at (b)(2).)  It appears that subsection (b)(2) merely allows for more severe punishment in the event of death or serious injury and does not define the threshold for a felony conviction.  Rather, a violation of § 20001(a) without death or permanent, serious injury is still what is called "a wobbler" under state law, meaning that it can be punished either as a felony or a misdemeanor.  Moreover petitioner cites no authority in support of his argument that "he should never have been convicted of a felony."  (Second Am. Pet. at 40.)

The state court's denial of relief with respect to petitioner's insufficiency of the evidence claim is not an objectively unreasonable application of Jackson and Winship to the facts of the case.  Accordingly, petitioner is not entitled to federal habeas relief on his claim that the evidence introduced at his trial was insufficient to support the finding that petitioner was guilty of violating California Vehicle Code § 20001.

C.  Illegal Vehicle Stop

Petitioner observes that the reason given for the initial traffic stop was that Officer Williams noticed the vehicle's brake lights were inoperable.  (Second Am. Pet. at 41.)  Petitioner

notes, however, that the traffic citation issued in this case did not cite any mechanical defects. (Id.) Petitioner argues that the vehicle was recently purchased and "could not have been sold to the owner if the lights were inoperative" as the vehicle was subject to an "implied warranty." (Id.) Furthermore, petitioner argues a police officer informed his sister that the reason for the traffic stop was the driver's failure to signal a turn and not because the brake lights were inoperable. (Id. at 42.) Petitioner argues therefore that the traffic stop was "warrantless and the subsequent charges have no foundation." (Id.)

The United States Supreme Court has held that "where the State has provided an opportunity for full and fair litigation of a Fourth Amendment claim, a state prisoner may not be granted federal habeas corpus relief on the ground that evidence obtained in an unconstitutional search or seizure was introduced at his trial." Stone v. Powell, 428 U.S. 465, 494 (1976). There is no evidence before this court indicating that petitioner was denied a full and fair opportunity to litigate any Fourth Amendment claim he wished to present in state court. Accordingly, this claim for relief is barred in this federal habeas proceeding. Stone, 428 U.S. at 494.

D. Perjured Testimony

Petitioner asserts that the prosecutor knowingly offered perjured testimony at his trial. (Second Am. Pet. at 43-44.) Specifically, petitioner argues that the prosecutor elicited testimony from Mims indicating that petitioner ordered her to "throw the gun out the window" and used the alleged presence of a gun in the vehicle against petitioner at his sentencing hearing, despite the fact that there was "no gun charge" filed against petitioner. (Id. at 43.) Petitioner also claims that Mims testified at his preliminary hearing that petitioner had not contacted her since the crash, but then testified at his trial that she and petitioner had "taken a trip" after the crash to discuss the case. (Id.)

A conviction obtained using knowingly perjured testimony violates a defendant's due process rights if "(1) the testimony (or evidence) was actually false, (2) the prosecution knew or should have known that the testimony was actually false, and (3) the false testimony was

1   material." Jackson v. Brown, 513 F.3d 1057, 1071-72 (9th Cir. 2008) (quoting Hayes v. Brown,

2   399 F.3d 972, 984 (9th Cir. 2005) (en banc)).

3          Here, petitioner has failed to establish that any of the challenged testimony was

4   actually false.  The fact that petitioner was not charged with a crime involving a gun does not

5   preclude the possibility that he did in fact throw a gun out the window during the highspeed

6   chase on the foggy night in question.  Mims admitted that she did not tell the police about the

7   gun when she gave her statement to police, so the gun's existence and relationship to petitioner

8   may well have gone undiscovered.  (RT at 93.)  Additionally, the prosecutor may have decided

9   that charging petitioner with a firearms offense, if a gun was later discovered, was too

10  problematic or unnecessary since petitioner was already facing his third felony strike with the

11  charges as originally filed.  With respect to Mims' inconsistent statements concerning any

12  contact she had with petitioner after the crash, Mims acknowledged on cross-examination that

13  she had previously testified that she had not seen petitioner since the night of the crash.  (Id. at

14  94.)  In her trial testimony, Mims claims she originally lied for petitioner because she "was trying

15  to help the man out" and "thought he was going to take a deal and get it over with."  (Id. at 93-

16  94.)

17         Moreover, even if the challenged testimony was false and the prosecution knew

18  that it was false, the testimony at issue was not material to petitioner's conviction.  "[F]alse

19  testimony is material, and therefore prejudicial, if there is 'any reasonable likelihood that the

20  false testimony could have affected the judgment of the jury.' "  Schad v. Ryan, 581 F.3d 1019,

21  1028 (9th Cir. 2009) (quoting Hayes v. Brown, 399 F.3d 972, 984 (9th Cir. 2005) (en banc)).

22  Here, there is not a reasonable likelihood that the challenged testimony could have affected the

23  trial judge's verdict.  Even if there had been no mention of a gun or of petitioner's contact with

24  Mims after the crash, the evidence of petitioner's guilt remained considerable.  Petitioner

25  borrowed his sisters' car only hours before that car was involved in a highspeed pursuit and

26  subsequent crash.  Moments after the car crashed, Officer Williams contacted an injured

passenger, Mims, who identified petitioner as the driver of the car and the person who fled the scene without inquiring about her condition.

Accordingly, for all the reasons discussed above, petitioner is not entitled to federal habeas relief with respect to his claim that his conviction was based upon perjured testimony.

E. Excluded Evidence

Petitioner next asserts that he requested, pursuant to the decision in <u>People v. Marsden</u>, 2 Cal.3d 118 (1970), that his trial counsel be relieved in part because his counsel refused to subpoena petitioner's mother to testify at his trial. (Second Am. Pet. at 45.) Petitioner claims that he argued that it was his "right" to request any witness to testify but that his trial counsel refused, stating that it was counsel's "call." <u>Id.</u> The trial judge denied petitioner's request to relieve his counsel. (<u>Id.</u>) Petitioner argues that in doing so the trial judge "placed the interviewing and decisions of what witnesses to call . . . completely in counsel's hands," thereby violating petitioner's right to compulsory process. (<u>Id.</u> at 46.)

A criminal defendant has a right to present witnesses in his own defense based on the Sixth Amendment's compulsory process provision and the Due Process Clause of the Fourteenth Amendment. <u>Washington v. Texas</u>, 388 U.S. 14, 19 (1967). A court may not arbitrarily exclude a material defense witness from the stand or material portions of his testimony. <u>See</u>, <u>e.g.</u>, <u>Rock v. Arkansas</u>, 483 U.S. 44, 55 (1987) (per se exclusion of post-hypnosis testimony violated due process); <u>Chambers v. Mississippi</u>, 410 U.S. 284, 302 (1973) (state evidentiary rules that barred defendant from presenting trustworthy exculpatory testimony violated due process).

Here, however, the trial court did not arbitrarily exclude any defense witness from testifying. The trial judge simply denied petitioner's motion to relieve his counsel where the court was "totally and completely convinced" that petitioner's counsel would do "everything legally possible and feasible" to defend petitioner. (Second Am. Pet. at 107.) There is no

16

evidence before this court that the trial judge ever made a ruling excluding the testimony of

petitioner's mother from the trial.  That decision as to which witnesses to call was instead made

by petitioner's counsel.  The trial court played no role in that determination.[3]

Accordingly petitioner is not entitled to federal habeas relief on this claim.

F.    Ineffective Assistance of Trial Counsel

Petitioner claims that his trial counsel rendered ineffective assistance of counsel

by: (1) failing to utilize at trial an expert witness on the effects of alcohol; (2) failing to file a

"peremptory challenge" against the trial judge; (3) failing to conduct an adequate investigation;

and (4) failing to present mitigating circumstances at his sentencing.  After setting forth the

applicable legal principles, the court will address each of these claims in turn below.

1. Legal Standards

The Sixth Amendment guarantees the effective assistance of counsel.  The United

States Supreme Court set forth the test for demonstrating ineffective assistance of counsel in

Strickland v. Washington, 466 U.S. 668 (1984).  To support such a claim, a petitioner must first

show that, considering all the circumstances, counsel's performance fell below an objective

standard of reasonableness.  466 U.S. at 687-88.  After a petitioner identifies the acts or

omissions that are alleged not to have been the result of reasonable professional judgment, the

court must determine whether, in light of all the circumstances, the identified acts or omissions

were outside the wide range of professionally competent assistance.  Id. at 690; Wiggins v.

Smith, 539 U.S. 510, 521 (2003).  Second, a petitioner must establish that he was prejudiced by

counsel's deficient performance.  Strickland, 466 U.S. at 693-94.  Prejudice is found where

"there is a reasonable probability that, but for counsel's unprofessional errors, the result of the

proceeding would have been different."  Id. at 694.  A reasonable probability is "a probability

sufficient to undermine confidence in the outcome."  Id. See also Williams, 529 U.S. at 391-92;

---

[3] Petitioner's claim that his trial counsel rendered ineffective assistance by failing to call petitioner's mother as a trial witness will also be discussed below.

Laboa v. Calderon, 224 F.3d 972, 981 (9th Cir. 2000).  A reviewing court "need not determine whether counsel's performance was deficient before examining the prejudice suffered by the defendant as a result of the alleged deficiencies . . . .  If it is easier to dispose of an ineffectiveness claim on the ground of lack of sufficient prejudice . . . that course should be followed."  Pizzuto v. Arave, 280 F.3d 949, 955 (9th Cir. 2002) (quoting Strickland, 466 U.S. at 697).

In assessing an ineffective assistance of counsel claim "[t]here is a strong presumption that counsel's performance falls within the 'wide range of professional assistance.'"  Kimmelman, 477 U.S. at 381 (quoting Strickland, 466 U.S. at 689).  There is in addition a strong presumption that counsel "exercised acceptable professional judgment in all significant decisions made."  Hughes v. Borg, 898 F.2d 695, 702 (9th Cir. 1990) (citing Strickland, 466 U.S. at 689).

## 2. Failure to Utilize an Expert Witness

Petitioner claims that his trial counsel rendered ineffective assistance by failing to retain an expert witness to impeach the credibility of Mims, the prosecution's main witness.  (Second Am. Pet. at 48.)  Specifically, petitioner argues that his trial counsel failed to retain an expert in "alcoholism and/or a medical expert" who would have testified that Mims was "not merely drunk but in a complete stupor."  (Id. at 48.)  Petitioner points out that Mims testified that she consumed two small bottles of gin prior to the crash and was drinking a third bottle during the police chase itself.  (Id.)  He argues that such consumption of alcohol would have rendered Mims "unable to ascertain many if not all of the details" of the crash.  (Id.)

Petitioner's trial counsel may well have decided that expert testimony on this issue was unnecessary, as the effects of alcohol on perception and memory are well known, were not in dispute, and was not a central issue in this case.  Such a tactical decision would not have been unreasonable under the circumstances of this case and thus does not constitute deficient performance.  See Strickland, 466 U.S. at 690 ("strategic choices made after thorough investigation of law and facts relevant to plausible options are virtually unchallengeable").

Additionally, petitioner's suggestion that if his trial counsel had consulted a medical or alcoholism expert they would have agreed to testify and that the testimony of such an expert would have supported petitioner's defense is speculative.  As such petitioner has failed to establish prejudice with respect to this claim.  See Wildman v. Johnson, 261 F.3d 832, 839 (9th Cir. 2001) (speculation that a helpful expert could be found or would testify on petitioner's behalf insufficient to establish prejudice); Bragg v. Galaza, 242 F.3d 1082, 1088 (9th Cir. 2001) (no ineffective assistance where petitioner did "nothing more than speculate that, if interviewed," a witness might have given helpful information); Dows v. Wood, 211 F.3d 480, 486 (9th Cir. 2000) (no ineffective assistance of counsel where there was no evidence in the record that a helpful witness actually existed and petitioner failed to present an affidavit establishing that the alleged witness would have provided helpful testimony for the defense); United States v. Berry, 814 F.2d 1406, 1409 (9th Cir. 1987) (appellant failed to meet the prejudice prong of an ineffective assistance claim because he offered no indication of what potential witnesses would have testified to or how their testimony might have changed the outcome of the hearing).

Moreover, even if petitioner's counsel had retained an expert and that expert agreed to testify in support of petitioner's defense, there is no reasonable probability that the result of petitioner's trial would have been different.  The trial judge was fully aware of Mims's alcohol consumption.  In fact Mims testified on cross-examination that she was "an alcoholic," that she drank a lot "every other day," that she had been drinking "all day" on the date in question, that she had consumed two small bottles of gin prior to the chase and was drinking from a larger bottle of gin during the chase itself, and that she keeps her "drink with [her] all the time."  (RT at 88-92.)  During closing arguments petitioner's trial counsel argued that in light of such testimony, Mims's credibility, believability, and competency should be questioned by the court.  (Id. at 159.)  In light of the substantial testimony concerning Mim's alcohol consumption, and the common knowledge of the effects of alcohol, it is highly unlikely that the testimony of an
/////

1    expert would added anything to the trial judge's understanding or evaluation of Mims's

2    testimony.

3           Under these circumstances petitioner's trial counsel was not ineffective by failing

4    to retain and call an expert witness and petitioner was, in any event, not prejudiced by his

5    counsel's failure to do so.  Accordingly, petitioner is not entitled to federal habeas relief on this

6    aspect of his ineffective assistance of counsel claim.

7                    3.  Failure to File Peremptory Challenge

8           Petitioner's next claim is that his trial counsel rendered ineffective assistance by

9    failing to "file a peremptory challenge" against the trial judge.  (Second Am. Pet. at 49.)

10   Petitioner complains that the same judge who heard and denied his Marsden motion later

11   determined his guilt.  (Id.)  Petitioner points out that during the Marsden hearing, his counsel

12   provided the court with a factual summary of the evidence against petitioner.  (Id.)  Petitioner

13   argues the summary was "tantamount to an admission of guilt" and was "prejudicial to any

14   defense that petitioner may [have decided] to enter later during trial."  (Id.)  Effective counsel,

15   petitioner argues, would have attempted to have the trial held before a different judge who had

16   not "been exposed to these damaging statements prior to trial."  (Id.)

17          There are two ways in which a criminal defendant may be denied his

18   constitutional right to a fair hearing before an impartial tribunal.  First, the proceedings and

19   surrounding circumstances may demonstrate actual bias on the part of the adjudicator.  See

20   Taylor v. Hayes, 418 U.S. 488, 501-04 (1974).  In other cases, the adjudicator's pecuniary or

21   personal interest in the outcome of the proceedings may create an appearance of partiality that

22   violates due process, even without any showing of actual bias.  Gibson v. Berryhill, 411 U.S.

23   564, 578 (1973); see also Exxon Corp. v. Heinze, 32 F.3d 1399, 1403 (9th Cir. 1994) ("the

24   Constitution is concerned not only with actual bias but also with 'the appearance of justice' ").

25   Here, there is no evidence that the judge who presided over petitioner's trial had a personal or

26   pecuniary interest in the outcome of the proceedings.  Accordingly, the only question is whether

1  counsel should have moved to recuse the trial judge because circumstances demonstrated actual

2  bias against petitioner on the part of the judge.

3          To demonstrate judicial bias, a petitioner must "overcome a presumption of

4  honesty and integrity in those serving as adjudicators." Withrow v. Larkin, 421 U.S. 35, 47

5  (1975). Thus, for example, it must be shown that the trial judge "prejudged, or reasonably

6  appears to have prejudged, an issue." Kenneally v. Lungren, 967 F.2d 329, 333 (9th Cir. 1992)

7  (quoting Partington v. Gedan, 880 F.2d 116, 135 (9th Cir. 1989) (Reinhardt, J. concurring and

8  dissenting)). Bias can "almost never" be demonstrated solely on the basis of a judicial ruling.

9  Liteky v. United States, 510 U.S. 540, 555 (1994). Accordingly, in assessing a substantive claim

10  of judicial bias on habeas review relief is warranted only if "the state trial judge's behavior

11  rendered the trial so fundamentally unfair as to violate federal due process under the United

12  States Constitution." Duckett v. Godinez, 67 F.3d 734, 740 (9th Cir. 1995).

13          Here, petitioner does not even allege that the trial judge in his case was in fact

14  biased against him or that a particular defense was foreclosed as a result of the Marsden hearing.

15  Rather, plaintiff merely alleges that his counsel should have challenged the trial judge because

16  "any defense that petitioner may [have] decide[d] to enter later during trial" was prejudiced by

17  the fact that the judge had heard his Marsden motion. (Second Am. Pet. at 49.) Petitioner has

18  not demonstrated any actual bias or prejudice with respect to any ruling made by the trial judge,

19  nor has he identified any specific defense that the trial judge prevented or diminished in any way.

20  There is no evidence before this court that the trial judge's behavior rendered petitioner's trial so

21  fundamentally unfair as to violate federal due process. Accordingly, petitioner's counsel cannot

22  be said to have provided ineffective assistance by failing to file a challenge against the trial

23  judge.

24          Moreover, petitioner has made no showing of prejudice flowing from his

25  counsel's failure to do so. A review of the Marsden hearing transcript reflects that the trial judge

26  not exposed to any evidence harmful to petitioner that was not later introduced at petitioner's

1   trial.  In fact, petitioner was allowed at the <u>Marsden</u> hearing to suggest the existence of

2   exculpatory evidence that was not later introduced at his trial.  In this regard, at the <u>Marsden</u>

3   hearing petitioner was able to argue to the judge that his mother would testify that there was

4   another person in the car at the time of the chase, that the driver of car was in fact Mims's cousin,

5   and that prior to the crash Mims had snorted cocaine in addition to drinking alcohol, all without

6   being subject to cross-examination.  (<u>Id.</u> at 94-106.)  For these reasons, petitioner was not

7   prejudiced by having the same judge preside over both his <u>Marsden</u> hearing and his trial.

8   Therefore, his trial counsel cannot be said to be deficient for failing to seek the recusal of the trial

9   judge.

10          Furthermore, even assuming petitioner's trial had been held before a different trial

11   judge there is not a reasonable probability that the result of that trial would have been any

12   different in light of the overwhelming evidence of petitioner's guilt.  Petitioner has for this

13   reason as well failed to demonstrate prejudice.

14          Accordingly, petitioner is not entitled to federal habeas relief on this aspect of his

15   ineffective assistance of counsel claim.[4]

16   /////

17   /////

18   

19          [4] It may be that petitioner is suggesting that his trial counsel provided ineffective
assistance by failing to seek assignment of a different trial judge pursuant to California Code of
20   Civil Procedure § 170.6 (providing for the assignment of another judge once in any action upon a
party's filing of an affidavit asserting the assigned judge's prejudice against the party or his or
21   her attorney).  Such an ineffective assistance claim would fail for the same reasons discussed
above.  There is no evidence before this court that the trial judge was biased in any way and thus
22   no indication that petitioner's counsel provided ineffective assistance by failing to file a § 170.6
motion against the assigned trial judge.  See <u>Allen v. Shepard</u>, No. Civ. S-06-1923 FCD DAD P,
23   2010 WL 424323, at *18 (E.D. Cal. Jan 27, 2010) (rejecting an ineffective assistance of counsel
claim based upon failure to pursue relief under § 170.6).  Indeed, petitioner and his counsel were
24   apparently so satisfied with the trial judge assignment that they waived jury trial and consented to
a court trial.  Moreover, as discussed above, because petitioner has failed to present any evidence
25   that the result of his trial would have been different had his counsel filed a § 170.6 challenge, he
has failed to demonstrate prejudice.  See <u>Watkin v. Adams</u>, No. 1:07-CV-01282-OWW-JMD-
26   HC, 2010 WL 922611, at *5 (E.D. Cal. Mar. 11, 2010) (rejecting an ineffective assistance of
counsel claim based on counsel's failure to file a §170.6 challenge due to lack of prejudice).

1        4. <u>Failing to Conduct an Adequate Investigation</u>

2        _____ Petitioner asserts that his trial counsel was ineffective for failing to investigate

3 "whether the vehicle's warranty included brake lights," and whether Officer Williams, the tow

4 truck driver, or anyone at the impound yard subsequently tested the brake lights.  (<u>Id.</u> at 51.)

5 Petitioner argues that presenting evidence that the brake lights on the vehicle were indeed

6 operational would have "undermined the probable cause for the initial traffic stop," and the

7 evidence relating to subsequent chase and accident would have been suppressed as "fruits of the

8 poisonous tree." (<u>Id.</u>)

9        Petitioner also asserts that his trial counsel was ineffective in failing to investigate

10 and present a third person defense.  (<u>Id.</u> at 52.)  In this regard, petitioner notes that Diane Ford

11 (the daughter of the vehicle's owner and petitioner's niece) testified that when petitioner left with

12 the vehicle and Ford's grandmother (petitioner's mother) there was "at least one other person" in

13 the vehicle.  (<u>Id.</u>)  Petitioner claims his mother would have testified that there were "three people

14 in the car, not just two" when she exited the vehicle prior to the chase that later ensued.  (<u>Id.</u>)

15 Petitioner argues that having his mother testify at his trial was his "constitutional right, not trial

16 counsel's call" and that effective counsel would have been aware of this right.  (<u>Id.</u>)

17        Defense counsel has a "duty to make reasonable investigations or to make a

18 reasonable decision that makes particular investigations unnecessary." <u>Strickland</u>, 466 U.S. at

19 691.  "This includes a duty to . . . investigate and introduce into evidence records that

20 demonstrate factual innocence, or that raise sufficient doubt on that question to undermine

21 confidence in the verdict."  <u>Bragg v. Galaza</u>, 242 F.3d 1082, 1088 (9th Cir. 2001) (citing <u>Hart v.</u>

22 <u>Gomez</u>, 174 F.3d 1067, 1070 (9th Cir. 1999)).   In this regard, it has been recognized that "the

23 adversarial process will not function normally unless the defense team has done a proper

24 investigation." <u>Siripongs v. Calderon (Siripongs II)</u>, 133 F.3d 732, 734 (9th Cir. 1998) (citing

25 <u>Kimmelman v. Morrison</u>, 477 U.S. 365, 384 (1986)).  Therefore, counsel must, "at a minimum,

26 conduct a reasonable investigation enabling him to make informed decisions about how best to

23

1   represent his client." Hendricks v. Calderon, 70 F.3d 1032, 1035 (9th Cir. 1995) (quoting

2   Sanders v. Ratelle, 21 F.3d 1446, 1456 (9th Cir. 1994) (internal citation and quotations omitted).

3   On the other hand, where an attorney has consciously decided not to conduct further investigation

4   because of reasonable tactical evaluations, his or her performance is not constitutionally

5   deficient. See Siripongs II, 133 F.3d at 734; Babbitt v. Calderon, 151 F.3d 1170, 1173 (9th Cir.

6   1998); Hensley v. Crist, 67 F.3d 181, 185 (9th Cir. 1995). "A decision not to investigate thus

7   'must be directly assessed for reasonableness in all the circumstances.'" Wiggins, 539 U.S. at

8   533 (quoting Strickland, 466 U.S. at 691). See also Kimmelman, 477 U.S. at 385 (counsel

9   "neither investigated, nor made a reasonable decision not to investigate"); Babbitt, 151 F.3d at

10  1173-74. A reviewing court must "examine the reasonableness of counsel's conduct 'as of the

11  time of counsel's conduct.'" United States v. Chambers, 918 F.2d 1455, 1461 (9th Cir. 1990)

12  (quoting Strickland, 466 U.S. at 690). Furthermore, "'ineffective assistance claims based on a

13  duty to investigate must be considered in light of the strength of the government's case.'" Bragg,

14  242 F.3d at 1088 (quoting Eggleston v. United States, 798 F.2d 374, 376 (9th Cir. 1986)).

15          Petitioner's argues that his trial counsel failed to investigate whether the vehicle's

16  brake lights were operational and that had he done so suppression of evidence as "fruit of the

17  poisonous tree" would have resulted.  such a claim raises a search and seizure issue. See Wong

18  Sun v. United States, 371 U.S. 471 (1963). The evidence introduced against petitioner at trial

19  was not the result of a search or a seizure. Even if the vehicle's brake lights had been

20  operational, petitioner's trial counsel could not have used that evidence to exclude Mims's

21  testimony that petitioner was the driver of the vehicle that engaged in the highspeed chase in an

22  attempt to evade police, crashed and fled the scene, leaving behind an injured Mims.

23          Moreover, petitioner admits that his trial counsel had an investigator interview the

24  owner of the car, who stated that she had just had the lights checked by a mechanic. (Second

25  Am. Pet. at 51.) Trial counsel was therefore apparently aware of the potential discrepancy

26  regarding the brake lights but elected not to file a motion to suppress. Such a motion would have

been meritless in any event because of the nature of the charges brought against petitioner and the evidence relied upon to convict him of those offenses.  An attorney's failure to make a meritless objection or motion does not constitute ineffective assistance of counsel.  Jones v. Smith, 231 F.3d 1227, 1239 n. 8 (9th Cir. 2000) (citing Boag v. Raines, 769 F.2d 1341, 1344 (9th Cir. 1985)).  See also Rhoades v. Henry, 596 F.3d 1170, 1179 (9th Cir. 2010) (counsel did not render ineffective assistance in failing to investigate or raise an argument on appeal where "neither would have gone anywhere"); Matylinsky v. Budge, 577 F.3d 1083, 1094 (9th Cir. 2009), cert. denied, ___U.S.___, 130 S. Ct. 1154 (2010) (counsel's failure to object to testimony on hearsay grounds not ineffective where objection would have been properly overruled); Rupe v. Wood, 93 F.3d 1434, 1445 (9th Cir. 1996) ("the failure to take a futile action can never be deficient performance").

With respect to petitioner's argument that his trial counsel failed to adequately investigate and present a "third person defense" at trial, the record belies petitioner's argument. During the hearing on petitioner's Marsden motion his counsel asked petitioner, "why don't you give me the name of the person so we can go find that person?"  (Second Am. Pet. at 95.) Petitioner replied that  the third person was "a person by the name of Marcus."  (Id. at 102.) Petitioner later stated that he had to "track the numbers down" and that he was reluctant to give the information to his trial counsel because he did not how "these people [were] going to be with" him. (Id. at 109.)  Thereafter, petitioner's trial counsel said that he would "hire a pro to locate" the people who could track down the alleged third person to whom petitioner was referring.  (Id. at 111.)

After the hearing, petitioner's trial counsel employed a private investigator to interview Audriesce Taylor, apparently identified by petitioner as someone who may have had information about the alleged third person.  Taylor provided a general description of the alleged third person but was unable to provide any contact information for him.  (See Resp't's Lod. Doc. Defendant's Exh. C.)  Thus, it appears from the record that petitioner's trial counsel did in fact

1  investigate the identity of the alleged third person referred to by petitioner but was unable to

2  locate him.

3  　　　　To the extent petitioner argues that his trial counsel was ineffective for failing to

4  call petitioner's mother to testify in support of a "third person" defense, trial counsel apparently

5  determined that having petitioner's mother testify would not be in the best interest of petitioner's

6  defense because his mother was in prison at the time, was not in the car when the police pursuit

7  took place and "has nothing to say about that." (Second Am. Pet. at 93.)  Moreover, petitioner's

8  mother would likely have been subject to impeachment based on her criminal record and would

9  not have been able to offer any relevant testimony as to the events that occurred after she exited

10  the vehicle.  Thus it appears clear that petitioner's counsel made a tactical decision not to call

11  petitioner's mother to testify.  Such a tactical decision does not appear to be unreasonable under

12  the circumstances of this case and thus does not constitute deficient performance.  See

13  Strickland, 466 U.S. 668, 690 (1984) ("strategic choices made after thorough investigation of law

14  and facts relevant to plausible options are virtually unchallengeable").

15  　　　　Accordingly, for the reasons stated above, petitioner is not entitled to federal

16  habeas relief on this aspect of his ineffective assistance of counsel claim.

17  　　　　　5. Failing to Present Mitigating Circumstances

18  　　　　Petitioner asserts his trial counsel was provided ineffective assistance by failing to

19  investigate and present an argument in mitigation at the time of petitioner's sentencing. (Second

20  Am. Pet. at 53.)  Specifically, petitioner argues that his trial counsel did not introduce evidence

21  that petitioner committed a prior strike while under the threat of being shot by "the actual

22  perpetrator." (Id. at 54.)  Petitioner claims that a probation report confirmed that he was acting

23  under duress when committing that prior offense. (Id. at 53-54.)

24  　　　　Petitioner however does not provide any evidence in support of this claim.  A

25  review of the probation report filed in connection with this case reflects that with respect to the

26  prior offense petitioner was credited with "participation" in a homicide where petitioner's co-

1  defendant was armed.  (Clerk's Transcripts on Appeal at 202-24.)  However, the report makes no

2  mention of petitioner acting under "duress" in connection with that prior crime.  (Id.)  Moreover,

3  the United States Supreme Court "has not delineated a standard which should apply to ineffective

4  assistance of counsel claims in noncapital sentencing cases," therefore there is no clearly

5  established federal law in this context pursuant to which petitioner would be entitled to federal

6  habeas relief.  Davis v. Grigas, 443 F.3d 1155, 1158 (9th Cir. 2006); Cooper-Smith v. Palmateer,

7  397 F.3d 1236, 1244 (9th Cir. 2005).

8          Accordingly, this aspect of petitioner's ineffective assistance of counsel claim is

9  also without merit and relief should be denied.

10      G.  Evidentiary Hearing

11         Finally, petitioner has requested an evidentiary hearing on his claims.  (Second

12  Am. Pet. at 17, 55.)  Pursuant to 28 U.S.C. § 2254(e)(2), an evidentiary hearing is appropriate

13  under the following circumstances:

14              (e)(2) If the applicant has failed to develop the factual basis of a
                claim in State court proceedings, the court shall not hold an
15              evidentiary hearing on the claim unless the applicant shows that-

16                  (A) the claim relies on-

17                  (i) a new rule of constitutional law, made retroactive to cases on
                    collateral review by the Supreme Court, that was previously
18                  unavailable; or

19                  (ii) a factual predicate that could not have been previously
                    discovered through the exercise of due diligence; and
20
                    (B) the facts underlying the claim would be sufficient to establish
21                  by clear and convincing evidence that but for constitutional error,
                    no reasonable fact finder would have found the applicant guilty of
22                  the underlying offense[.]

23         Under this statutory scheme, a district court presented with a request for an

24  evidentiary hearing must first determine whether a factual basis exists in the record to support a

25  petitioner's claims and, if not, whether an evidentiary hearing "might be appropriate."  Baja v.

26  Ducharme, 187 F.3d 1075, 1078 (9th Cir. 1999).  See also Earp v. Ornoski, 431 F.3d 1158, 1166

27

1   (9th Cir. 2005); Insyxiengmay v. Morgan, 403 F.3d 657, 669-70 (9th Cir. 2005).  A petitioner

2   requesting an evidentiary hearing must also demonstrate that he has presented a "colorable claim

3   for relief."  Earp, 431 F.3d at 1167 (citing Insyxiengmay, 403 F.3d at 670, Stankewitz v.

4   Woodford, 365 F.3d 706, 708 (9th Cir. 2004) and Phillips v. Woodford, 267 F.3d 966, 973 (9th

5   Cir. 2001)).  To show that a claim is "colorable," a petitioner is "required to allege specific facts

6   which, if true, would entitle him to relief."  Ortiz v. Stewart, 149 F.3d 923, 934 (9th Cir. 1998)

7   (internal quotation marks and citation omitted).

8           The undersigned concludes that no additional factual supplementation is necessary

9   in this case and that an evidentiary hearing is not appropriate with respect to the claims raised in

10  the instant petition.  The facts alleged in support of these claims, even if established at a hearing,

11  would not entitle petitioner to federal habeas relief.  Therefore, petitioner's request for an

12  evidentiary hearing should be denied.

13                                  CONCLUSION

14          For the reasons set forth above, IT IS HEREBY RECOMMENDED that

15  petitioner's application for a writ of habeas corpus (Doc. No. 25) and his request for an

16  evidentiary hearing be denied.

17          These findings and recommendations are submitted to the United States District

18  Judge assigned to the case, pursuant to the provisions of 28 U.S.C. § 636(b)(1).  Within twenty-

19  one days after being served with these findings and recommendations, any party may file written

20  objections with the court and serve a copy on all parties.  Such a document should be captioned

21  "Objections to Magistrate Judge's Findings and Recommendations."  Any reply to the objections

22  shall be served and filed within seven days after service of the objections.  Failure to file

23  objections within the specified time may waive the right to appeal the District Court's order.

24  Turner v. Duncan, 158 F.3d 449, 455 (9th Cir. 1998); Martinez v. Ylst, 951 F.2d 1153 (9th Cir.

25  1991).  In any objections he elects to file petitioner may address whether a certificate of

26  appealability should issue in the event he elects to file an appeal from the judgment in this case.

                                        28

1  <u>See</u> Rule 11, Federal Rules Governing Section 2254 Cases (the district court must issue or deny a

2  certificate of appealability when it enters a final order adverse to the applicant).

3  DATED: May 18, 2010.

4

5  _____

6  DALE A. DROZD
   UNITED STATES MAGISTRATE JUDGE

7  DAD:6
   morris1790.hc

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26